UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSEPH MARCIANO and
BACK TO HEALTH INCORPORATED,

                                Plaintiffs,

                  -vs-                                      08-CV-305-JTC

ATLANTIC MEDICAL SPECIALITIES, INC.,

                                Defendant.

## BACKGROUND and FACTS

This action was originally commenced in New York State Supreme Court, Erie County and was removed to this court on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332. Plaintiffs seek damages for breach of contract, *quantum meruit*, and unjust enrichment for unpaid commissions on the sale of medical equipment. Plaintiffs allege that defendant acted as a sales representative for a corporation known as Pulmonetics Systems, Inc. ("Pulmonetics") and that plaintiffs were a "sub-representative" for defendant (Item 1, Exh. A, ¶¶ 10, 12). Plaintiffs further allege that the parties agreed that plaintiffs would receive 75% of the commission on sales of Pulmonetics products "brought about by the efforts of Plaintiffs." *Id.,* ¶ 14. Plaintiffs state that they made a sales presentation to the New York State Department of Health ("DOH") in March 2006 and that, as a result of their efforts, a contract was secured for the sale of 1700 ventilators to New York State. *Id.,* ¶¶ 15, 16. The contract was divided into two shipments, each of 850 ventilators. After the first shipment, "in 2006 and/or early 2007" (*Id.,* ¶ 18), defendant earned a commission of

$416,202.50 and paid plaintiffs $230,144.58. After the second shipment, "in 2007 and/or early 2008" (*Id.,* ¶ 22), defendant earned another commission of $416,202.50, and paid nothing to plaintiffs. *Id.,* ¶¶ 17-24. Plaintiffs allege that they should have received two commissions of $312,151.88. *Id.,* ¶¶ 21, 25. Pulmonetics was originally a named defendant in this action, but the claim against it was voluntarily discontinued.

On May 25, 2010, plaintiffs filed a motion to compel compliance with a subpoena (Item 40). In a Declaration, plaintiff's counsel stated that he served a subpoena on Pulmonetics on February 2, 2010. Plaintiff's counsel stated that as part of the resolution of the claim against Pulmonetics, its attorney agreed to accept service of a subpoena (Item 40, Att. 2, ¶ 5). Subsequently, Pulmonetics was acquired by CareFusion 203, Inc. ("CareFusion"). Despite the agreement of the Pulmonetics attorney, the attorney for CareFusion refused to accept service of the subpoena. *Id.,* ¶¶ 18, 20.

An additional subpoena was served on CareFusion on June 2, 2010. On June 17, 2010, defendant filed a motion for a protective order in connection with the subpoena served upon CareFusion (Item 44). The parties then negotiated a stipulated protective order governing the production of documents by CareFusion (Item 46). That agreement required that CareFusion review all documents responsive to plaintiff's subpoena, produce all responsive, non-privileged documents, and provide the court with those documents which it deemed privileged for the court's review. The stipulation was approved by the court on September 14, 2010 (Item 48). Defendant has provided the records and the court has completed its *in camera* review.

**DISCUSSION**

Defendant has withheld the production of seven documents on the basis of the work product doctrine. The documents are e-mail communications between Beth Throne, defense counsel and Jack Crowley, President of defendant American Medical Specialties, Inc. ("AMS"), and between Mr. Crowley and David Fowler, Director of Sales for Carefusion. The documents are dated April 21, 2010, May 12, 2010, May 13, 2010, and June 9, 2010. In the June 9, 2010 e-mail, all of the previous e-mails were forwarded to Mr. Fowler by Mr. Crowley. Plaintiffs argue that AMS waived the work product privilege by disclosing its and its attorney's mental impressions to Fowler, a third-party. Additionally, they argue that they have a "substantial need" to view the documents. In response, defendant argues that it is aligned in interest with Mr. Fowler and thus has not waived the work product privilege.

"The work-product doctrine, codified for the federal courts in Fed. R. Civ. P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). "Analysis of one's case 'in anticipation of litigation' is a classic example of work product and receives heightened protection under Fed. R. Civ. P. 26(b)(3)." *Id.* at 1196-97 (citing *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154 (1975)).

> Rule 26(b) (3) ... states that documents "prepared in anticipation of litigation or for trial" are discoverable only upon a showing of substantial need of the materials and inability, without undue hardship, to obtain their substantial equivalent elsewhere. Even where this showing has been made, however, the Rule provides that the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

*Id.* at 1197 (quoting Fed. R. Civ. P. 26(b)(3)). There are three prerequisites for application of the work-product doctrine: "'The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative.'" *In re Veeco Instruments, Inc. Securities Litigation*, 2007 WL 724555, at *4 (S.D.N.Y. March 9, 2007) (quoting *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 31556382, at *4 (S.D.N.Y. November 15, 2002)).

The Second Circuit held in *Adlman* that "[w]here a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3)." *Adlman,* 134 F.3d at 1195. Therefore, the court's analysis of whether the work-product doctrine applies begins with the question of whether the documents in question would have been prepared in substantially similar form "but for" the prospect of litigation.

It is well-established that voluntary disclosure of confidential material to a third party waives any applicable attorney-client privilege. *See United States v. Jacobs*, 117 F.3d 82, 91 (2d. Cir. 1997). Protection under the work product doctrine, however, is not automatically waived by a third party disclosure. Rather, work product protection is waived only when documents are used in a manner contrary to the doctrine's purpose, when disclosure "substantially increases the opportunity for potential adversaries to obtain the

4

information." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445-46 (S.D.N.Y. 2004) (quoting *In Re Pfizer, Inc. Securities Litigation*, 1993 WL 561125, at *6 (S.D.N.Y. December 23, 1993)). Protection is thus forfeited "when work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary." *Bank of America, N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002).

On the other hand, "courts have generally held that where the disclosing party and the third party share a common interest, there is no waiver of the work product privilege." *Merrill Lynch & Co.*, 229 F.R.D. at 446. In this circuit, the so-called "common interest" doctrine

> precludes a waiver of the underlying privilege concerning confidential communications between the parties "made in the course of an ongoing common enterprise and intended to further the enterprise," irrespective of whether an actual litigation is in progress. Thus, the common interest doctrine permits the disclosure of a privileged communication without waiver of the privilege provided the party claiming an exception to waiver demonstrates that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy.

*Sokol v. Wyeth, Inc.*, 2008 WL 3166662, at *5 (S.D.N.Y. August 4, 2008) (internal cites omitted). The common interest doctrine does not provide an independent source of protection from disclosure; it is inapplicable to documents not otherwise protected by the attorney-client privilege or work product doctrine. *Id.*

In this case, the documents have been produced to the court and both parties have provided a statement, in letter form, of their respective legal positions (Items 49, 50). Having reviewed the documents and considered the arguments in support of and in

5

opposition to their production, the court finds that the e-mails between Ms. Throne and Mr. Crowley are communications between client and counsel regarding the ongoing litigation between plaintiffs and AMS.  The e-mails between Mr. Crowley and Mr. Fowler also relate to the  ongoing litigation, with Mr. Fowler providing information to Mr. Crowley that would arguably assist in the defense of the action.  Additionally, Mr. Crowley provided Mr. Fowler with copies of all the pertinent e-mails so as to secure Mr. Fowler's assistance in formulating the defense strategy.

To the extent that the documents constitute attorney work product, the court finds that the privilege has been waived by their disclosure to Mr. Fowler.   Mr. Fowler is a director of CareFusion and defendant is the exclusive distributor of CareFusion products.  Neither Mr. Fowler nor CareFusion is a party to the lawsuit, although Mr. Fowler has personal knowledge of the events that led to the litigation and has been identified as a witness whose deposition has been noticed.  Mr. Fowler, Mr. Crowley, and AMS apparently share a common business interest, but neither Mr. Fowler nor CareFusion has any legal interest in the pending litigation with plaintiffs.  The common interest doctrine does not "encompass a joint business strategy which happens to include as one of its elements a concern about litigation."  *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y.1 995); *see also Doctor's Assoc., Inc. v. QIP Holder LLC,* 2009 WL 1683628, *3 (D.Conn. February 26, 2009), *report accepted by* 2009 WL 1668573 (D.Conn. June 15, 2009) (existence of a legal, rather than commercial, venture is critical component of common interest doctrine); *Bank of America, N.A. v. Terra Nova Ins. Co.*, 211 F.Supp.2d 493, 497 (S.D.N.Y. 2002) (mere fact that the parties were working together to achieve a commercial goal cannot by itself result in an identity of interest).  While Mr.

Fowler has apparently aligned himself with Mr. Crowley and AMS, disclosure of the e-mails to Mr. Fowler, a third-party with no legal interest in the ongoing litigation, increases the risk that the documents could end up in the hands of a potential adversary. Accordingly, the court finds that the disclosure of the e-mails to Mr. Fowler constitutes a waiver of the work product privilege.[1]

## CONCLUSION

Plaintiff's motion to compel is granted. The documents shall be disclosed to plaintiff forthwith. Thereafter, the parties shall confer in an effort to conclude discovery. The court will conduct a telephone status conference on Monday, February 14, 2011 at 2:30 pm to set a further schedule.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: January 20, 2011
p:\pending\2008\08-305.dec110

---

[1] Having found waiver, the court need not reach the question of plaintiff's need for the documents or alternative means of obtaining the information. *See Samad Bros., Inc. v. Bokara Rug Co.,* 2010 WL 5095356, *4 (S.D.N.Y. December 13, 2010).

7